## APPEAL OF BUTTERFIELD'S EXECUTORS.

1. A wife gave a mortgage *without joining her husband*, on property which was in her name ; judgment was afterwards obtained on the mortgage, and the property was sold by the sheriff on a judgment against the husband and the wife.  *Held*, on distribution of the fund, that, after payment of prior liens, it should be appropriated to the judgment on the mortgage.

2. The judgment on the mortgage might have been reversed or set aside at the instance of the wife, but until directly avoided by her, it cannot be impeached collaterally except for fraud.

**Appeal from the decree of the District Court of Allegheny county.**

Opinion delivered March 2, 1874, by

WILLIAMS, J.   The legal title to the land sold by the sheriff was in the wife, and, though the equitable estate was in the husband, he could

not compel a conveyance of the wife's legal title, without refunding to her the purchase-money which she paid O'Hara, in order to procure it. The sale on the judgment against the husband and wife, divested the titles of both. How, then, shall the proceeds of sale be distributed? Shall the residue, after satisfying the judgment on which the property was sold, and the other liens and charges for which the husband was liable, be given to the husband, as decreed by the District Court; or shall it be distributed between the husband and the representatives of the wife's mortgagee, as claimed by the appellants? If the controversy was between the husband and wife, manifestly, the fund should be divided between them in accordance with their respective rights and equities. The evidence shows that in 1847, the husband purchased the land of O'Hara, for the sum of four hundred dollars; that he built a two-story brick dwelling house and frame kitchen thereon, and paid forty or fifty dollars of the purchase-money. In 1867, the wife paid the residue, amounting to six hundred and sixty-nine dollars and fifty cents, and obtained from O'Hara a deed for the land. The sum paid by the wife with interest to the sheriff's sale is, then, the measure of her interest in the land, and of her share of the proceeds of sale. If so, it is clear that the husband would not be entitled as against the wife to the whole of the fund left for distribution, but only to the residue after reimbursing the wife the amount of the purchase-money paid O'Hara. But the controversy here is not between the husband and wife, but between the husband and the legal representatives of the wife's mortgagee. Are the latter, then, entitled to the wife's share of the fund? If not, they have no standing in court, and it is immaterial what are the equities between the husband and wife. If it be conceded that the wife had no power to execute the mortgage as a *feme sole* trader, and that the mortgage was void, because the husband did not join with her in its execution, it does not follow that the judgment obtained against the wife on the mortgage was a nullity. On the contrary, the execution of the mortgage is conclusively established by the judgment in the scire facias upon it. Edmundson *v.* Nichols, 10 Harris 74. The mortgage is merged in the judgment, and, even if null and void, cannot be collaterally impeached. Hartman *v.* Ogborn, 4 P. F. Smith 120. In this respect, the judgment on a mortgage under the act of 1705, which is a proceeding *in rem.*, differs from a judgment *in personam*, on the bond of a married woman, which is absolutely void. Doubtless the judgment on the mortgage was voidable, and might have been set aside or reversed at the instance of the wife, but until directly avoided by her, its validity cannot be inquired into or impugned collaterally except for fraud. Lowber's Appeal, 9 W. & S. 387; Billings *v.* Russel, 11 Harris, 184; Yaple *v.* Titus, 5 Wr. 195. The judgment on the mortgage, then, cannot be disregarded, but must be treated as conclusive in this proceeding. Thompson's Appeal, 7 P. F. Smith, 175; if so, it bound the wife's interest in

the land, and is entitled to so much of the fund as was produced by the sale thereof. The decree of the District Court must, therefore, be reversed, and the wife's share of the proceeds of sale be appropriated to the judgment on the mortgage, and the residue to the husband. Distributing the fund in this way will do exact justice between the parties. It will give to the appellants the money which the mortgagee lent the wife to enable her to pay the purchase-money, and procure a deed for the land; and it will give to the husband the proceeds realized from the sale of his equitable estate, and he can claim no more in law or equity.

And now, March 2, 1874, it is ordered, adjudged, and decreed that the decree of the District Court, distributing the residue of the proceeds of the sheriff's sale, viz. : The sum of twelve hundred and thirty-four dollars and sixty-six cents to Philip Weyman, be reversed and set aside ; and it is further ordered, adjudged and decreed, that part of said sum, viz: Six hundred and sixty-nine 50-100ths dollars, with interest thereon, from April 10, 1867, to December 1, 1871, amounting to eight hundred and fifty-five dollars and ninety-five cents ($855.95), be distributed and paid to the appellants, executors of Jonas Butterfield, deceased, on judgment Sur Mortgage v. Catharine Weyman, No. 1008, December Term, 1871 ; and that the residue of said sum, viz: Three hundred and seventy-eight 71-100ths dollars ($378.71), be distributed and paid to Philip Weyman, the appellee, after deducting therefrom the costs of this appeal.